UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JAMES P. LITTLE, M.D., ) | |
| ) | Case No. 1:20-cv-109 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Christopher H. Steger |
| SISKIN HOSPITAL FOR PHYSICAL ) | |
| REHABILITATION, INC., ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

The only federal claims in this case are Plaintiff James P. Little's claims arising under § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a). (*See* Doc. 1, at 31–41.) Section 502 describes various methods of civil enforcement available under ERISA, including bringing a civil action: (i) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"; (ii) to seek relief based on a plan administrator's failure or refusal to comply with an appropriate request for information by a participant or beneficiary; (iii) "to enjoin any act or practice which violates [ERISA] or the terms of the plan"; or (iv) "to obtain other appropriate equitable relief." 29 U.S.C. §§ 1132(a)(1), (a)(3), (c). Such civil actions may only be brought "by a participant or beneficiary." *Id.* §§ 1132(a), (c); *see Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 518 (6th Cir. 1995). ERISA defines a "participant" as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). It defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id*. § 1002(8). Section 1002 further defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity" and defines "employee" as "any individual employed by an employer." *Id.* § 1002(5)–(6).

In 1992, the Supreme Court recognized that, based on ERISA's definition of "participant," a plaintiff bringing a claim pursuant to ERISA's civil-enforcement provision can only succeed if he or she was an "employee" of the "employer" who offered the benefit plan. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 320–21 (1992). To "determin[e] who qualifies as an 'employee' under ERISA," the Court adopted the common-law test set forth in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989):

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323 (quoting *Reid*, 490 U.S. at 751–52). *Darden* explained that the common-law agency principles summarized in *Reid* best comported with recent precedents "and with the common understanding, reflected in those precedents, of the difference between an

employee and an independent contractor." *Id.* at 327. Since *Darden*, the Supreme Court has maintained that "participants" in ERISA-covered benefit plans must be "employees." *See, e.g.*, *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 12 (2004) ("ERISA's definitions of 'employee,' and, in turn, 'participant,' are uninformative.").

In his complaint, Little asserts that he was both a participant and a beneficiary of an employee benefit plan and that he was an employee of Defendant Siskin Hospital for Physical Rehabilitation, Inc. ("Siskin"). (Doc. 1, at 2, 6.) After Little filed his complaint, Siskin moved to dismiss for lack of subject-matter jurisdiction, arguing, among other things, that Little lacked standing to sue under ERISA because he was not Siskin's employee and thus could not be a participant or beneficiary of a plan. (*See* Doc. 12, at 8.) Little responded that the common-law agency factors weighed in favor of his status as Siskin's employee but also argued that his ERISA claims did not turn on his employee status because he was a "beneficiary" of an employee benefit plan administered by Siskin. (Doc. 14, at 14.) Little argued, and still argues, that he did not have to be Siskin's employee to be a participant in a deferred compensation plan under I.R.C. § 457(b), the type of plan which serves as the basis for his claims, and that, even if he is not a participant, he is a beneficiary of the 457 plan. (*Id.* at 16–17.)

Upon consideration of the parties' arguments, the Court denied Siskin's motion to dismiss the ERISA claims, finding that Little had sufficiently pleaded that he was an employee, and deferred resolution of the motion to dismiss Little's state-law claims. (*See* Doc. 23, at 18.) Because the only basis for the Court's subject-matter jurisdiction was federal-question jurisdiction premised on Little's ERISA claims, and because the parties disputed whether the facts showed that Little was Siskin's employee—and whether he participated in any ERISA-covered plan—the Court ordered limited discovery on the issue of whether Little was an

employee or independent contractor and set an evidentiary hearing on this issue. (*See* Doc. 22, at 1–3.) In setting this schedule, the Court ordered Siskin to promptly produce "[a]ny personnel or similar records related to [Little's] work for [Siskin]" and "[a]ny ERISA plan relevant to [Little's] claims." (*Id.* at 1.) The Court acknowledged Little's belief that there was an ERISA-covered plan and Siskin's denial of the existence of any such plan. (*Id.* at 2.) The Court also ordered Little to brief whether this Court has subject-matter jurisdiction over his claims if Little was not an employee. (*Id.* at 3.)

The parties complied with the limited discovery schedule and briefed the employee issue (Docs. 28, 29), as well as the issue of whether the Court had subject-matter jurisdiction (Docs. 24, 25, 26). On December 17, 2020, the parties appeared before the Court for an evidentiary hearing on the employee issue. (*See* Docs. 35, 36.)

Upon consideration of the parties' briefs, exhibits, and oral argument, it has become clear that resolution of the employee issue alone will not determine whether Little has a claim under ERISA.[1] Although the employee issue has largely been the focus of this litigation, the efficient

---

[1] The Court rejects Little's contention that he can be an ERISA participant if he is not an employee. *See* 29 U.S.C. § 1002(7) (defining an ERISA participant as "any *employee* or *former employee* of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan" (emphasis added)); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) ("In our view, the term 'participant' is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." (citations omitted)). However, some circuit courts have held that an independent contractor can be a "beneficiary" under ERISA as long as he or she is "a person designated . . . by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8); *Ruttenberg v. U.S. Life Ins. Co. in City of N.Y.*, 413 F.3d 652, 662 (7th Cir. 2005) ("[A]n ERISA 'beneficiary' may be a person designated to receive benefits under the terms of the plan itself; the definition is not limited to individuals designated by a 'participant' to receive benefits."); *Hollis v. Provident Life & Acc. Ins. Co.*, 259 F.3d 410 (5th Cir. 2001) (holding that the plaintiff's "independent contractor status does not preclude him from being a beneficiary").

resolution of Little's ERISA claims turns on whether he has established the existence of an ERISA plan. To succeed on an ERISA claim, either as a participant or a beneficiary, Little must show he "is or may become eligible to receive a benefit . . . from an employee benefit plan." 29 U.S.C. §§ 1002(7)–(8). As explained below, regardless of Little's employment status during the relevant time period, his ERISA claim fails because he has not established the existence of an employee benefit plan.[2][3]

## II. BACKGROUND

Little is a physician and has a master's degree in business administration. (Doc. 1, at 5.) Little is also president and owner of Occupational, Alternative & Rehabilitative Services, P.C. ("OARS"). (Doc. 28, at 1; Doc. 29, at 2.) Defendant Siskin Hospital for Physical Rehabilitations, Inc. ("Siskin") is a private, non-profit inpatient rehabilitation facility in Chattanooga, Tennessee. (Doc. 1, at 5; Doc. 28-1, at 2.)

In 1989, Little, as president and owner of OARS (then Siskin Rehabilitation Group, P.C.), entered into an agreement with Siskin ("the Contract"), under which OARS agreed to

---

[2] In the Sixth Circuit, "the existence of an ERISA plan must be considered an element of a plaintiff's claim under Section 502(a)(1)(B), not as a prerequisite of federal jurisdiction." *Daft v. Advest, Inc.*, 658 F.3d 583, 590–91 (6th Cir. 2011). Accordingly, the Court has jurisdiction to consider whether there is an ERISA plan supporting Little's claims, though the Court ultimately concludes there is not.

[3] Though discovery to this point centered on evidence of Little's employment status, evidence concerning the Plan and any plan documents was specifically included in the limited discovery allowed prior to the evidentiary hearing in this case. (*See* Doc. 22, at 1 ("Defendant shall produce to Plaintiff . . . [a]ny ERISA plan relevant to Plaintiff's claims or in place during the time periods Plaintiff claims to have participated in an ERISA plan established by Defendant."); *id.* at 2 (ordering Plaintiff "to file a motion to compel the production of any such [plan-related] documents no later than three days after Defendant's service of its initial disclosures, if necessary").) Thus, the parties have had opportunity to request and exchange any available evidence relating to the existence of an ERISA-covered plan. The parties have also argued the existence of such a plan in their briefs on this Court's jurisdiction over Little's ERISA claims if he is found to be an independent contractor. (*See* Docs. 24, 25.)

provide staffing and other services to Siskin. (Doc. 28, at 1; Doc. 29, at 2; *see* Doc. 28-1 (the Contract).) The Contract clarifies that Siskin retained OARS for the purpose of providing physicians in the following service categories: (1) Medical Director and administrative services; (2) specialty medical directors; and (3) treatment team leaders and full case managers. (*See* Doc. 28-1, at 4–5.)

The Contract required OARS to provide a physician to serve in a full-time capacity as Medical Director, who would also serve as the Chief Medical Officer and report to Siskin's Chief Executive Officer. (*Id.* at 5; *see also id.* at 3 (defining "Medical Director" as "a Physician provided by [OARS] appointed . . . to assume and discharge the responsibilities for professional direction" at Siskin).) Appendix A to the Contract further provided that the Medical Director was required to (1) "[s]erve in an advisory capacity to the Board of Directors and the executive management"; (2) "serve as liaison between the medical staff and the administration"; (3) "[a]dminister [Siskin's] medical affairs," including planning, coordinating, and directing clinical services; (4) be responsible for development activities, affiliations, and medical activities; and (5) "[p]erform such services as [Siskin] designates from time to time," including various administrative responsibilities, the oversight of medical staff, connecting Siskin with others in the medical community, and serving on various committees. (*Id.* at 18–20.) Pursuant to the Contract, Little was appointed Medical Director. (*See* Doc. 29, at 3.)

From 1991 to 1996, Little paid $7,500 per year from his Medical Director stipend[4] into what he believed was a Section 457 nonqualified retirement plan ("the Plan"). (Doc. 24, at 1; Doc. 29, at 1.) Little relies on his own memory, the notation on the checks he wrote, and audit

---

[4] Little refers to this money as having be "withheld" from his stipend but admits that his Medical Director stipend was first paid to OARS pursuant to the Contract and the $7,500 paid back to Siskin. (Doc. 36, at 14.) For the purposes of this opinion, this distinction is irrelevant.

statements from these years to supply information about the Plan.  (*See* Doc. 24, at 1–2.)  The latest of these audit statements directed to Little asked him to confirm that "Siskin Hospital is holding $37,500 in section 457 nonqualified retirement plan contributions for Dr. James Little as of June 30, 1996."  (*See* Doc. 1-2, at 1.)  Little responded to the statement, confirming that he had "contributed a total of $37,500 in section 457 nonqualified retirement plan [sic]."  (*Id.* at 3.)

Siskin acknowledges Little's payments but denies the existence of such a plan.  (Doc. 28, at 2.)  Instead, Siskin maintains that it did not establish any 457 top-hat plan until 2002 ("the 2002 Plan"), two years after Siskin terminated the Contract with OARS and Little ceased working as Medical Director.  (*Id.* at 6; *see also* Doc. 24-2 (the 2002 Plan).)  At the evidentiary hearing, the parties stipulated to the testimony of Siskin's vice-president of finance and chief financial officer, Carol Arnhart, that the 2002 Plan "was the first such plan established by Siskin Hospital ever."  (Doc. 36, at 3–4.)  Siskin asserts that, because it had no 457 plan until 2002, "it would be impossible for Dr. Little to have been eligible to participate in an ERISA Plan that was not in existence, regardless of whether he was a common law employee or an independent contractor."  (Doc. 28, at 6.)

### III. ANALYSIS

"Determining the existence of an ERISA plan is a question of fact to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person[.]" *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 847 (6th Cir. 2006) (citing *Thompson v. Am. Home Assurance Co.*, 96 F.3d 429, 434 (6th Cir. 1996)).  To determine whether a plan exists, the Court "inquir[es] whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Thompson.*, 95 F.3d at 435  (cleaned up).

Here, based on the lack of information about the Plan, the lack of any acknowledgement on Siskin's part that it actually created such a Plan, and the lack of plan documents, the Court finds that a reasonable person could not ascertain any of these factors from the surrounding circumstances.

Little states, without citation to the record, that "[t]he intended benefits were the principal contributions and the investment returns Siskin would collect on the funds while the funds were in Siskin's possession." (Doc. 24, at 14.) He further asserts, again without citation, that he himself was the beneficiary, that "[t]he source of financing was [his] deferred compensation," and that "[t]he procedures to receiving benefits [were to] request to receive disbursements upon retirement." (*Id.*) But the Court cannot blindly accept Little's assertions concerning the terms of the Plan when they are unsupported by evidence. The evidence in the record shows only that Little *believed* he was paying into a 457 deferred-compensation plan but does not establish the existence of such a plan.

"One of ERISA's 'core functional requirements' is that each 'employee benefit plan shall be established and maintained *pursuant to a written instrument*." *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 561 (6th Cir. 2015) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)) (emphasis original to *Orrand*). "ERISA's 'statutory scheme . . . is built around reliance on the face of written plan documents.'" *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 929 (6th Cir. 2014) (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013)).

> Congress, in passing ERISA, did not intend that participants in the employee benefit plans should be left to the uncertainties of oral communications in finding out precisely what rights they were given under their plan. That is why ERISA makes it mandatory that "every" plan be established and maintained under "a written instrument."

*Musto v. Am. Gen. Corp.*, 861 F.2d 897, 909–10 (6th Cir. 1988) (quoting 29 U.S.C. § 1102(a)(1)). "Every ERISA plan must specify a funding mechanism, must allocate operational

and administrative responsibilities, and must state how payments are made to and from the plan." *Sprague v. Gen. Motors. Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (en banc) (citing 29 U.S.C. § 1102(b)(1)–(2), (4)).[5] ERISA jurisprudence also emphasizes the necessity of a written plan at several points throughout the adjudication of an ERISA claim. A written plan is critical to the Court's evaluation of: (1) whether the plan is subject to enforcement via ERISA's enforcement mechanisms; (2) who is a plan beneficiary; and (3) how to enforce the plan—*i.e.*, what benefits are conferred by the plan.

To be subject to ERISA's civil enforcement mechanisms, the Plan in which Little participated must have been an employee benefit plan. *See* 29 U.S.C. § 1002. An "employee benefit plan," as it relates to a pension plan, means:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i) provides retirement income to employees, or
>    (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

*Id.* § 1002(2)(A). Plan documents are essential to the determination of whether a plan falls within this definition. As the Sixth Circuit has explained, "[i]n order to distinguish an ERISA from a non-ERISA plan, we must look to the nature of the plan itself." *Kolkowski*, 448 F.3d at

---

[5] Even courts outside of this circuit that have accepted the existence of an ERISA plan absent a written plan document have only done so when it was established that the plan was a "reality" and the court could determine "whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *See James v. Nat'l Bus. Sys., Inc.*, 924 F.2d 718, 720 (7th Cir. 1991) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)).

848 (citing *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir. 2002)); *see also Sprague*, 133 F.3d at 402 ("Congress intended that plan documents and [summary plan descriptions] exclusively govern an employer's obligations under ERISA plans." (citations omitted)).

Plan documents are also necessary to determine which of ERISA's provisions apply to a particular plan or claim. Here, Little asserts that the Plan entitling him to benefits is a "top-hat plan." (*See* Doc. 29, at 1.) A top-hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated individuals." 29 U.S.C. § 1051(2); *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 250 n.2 (6th Cir. 1989). Top-hat plans are excluded from ERISA's traditional protections pursuant to 29 U.S.C. § 1051(2), because Congress recognized "that certain individuals, by virtue of their positions or compensation level, have the ability to affect or substantially influence, through negotiations or otherwise, the design and operation of their deferred compensation plan and would, therefore, not need the substantive rights and protections of ERISA." *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir. 2007) (internal citations and quotation marks omitted). In determining whether a plan is a top-hat plan, courts in the Sixth Circuit consider: (1) "the percentage of the total workforce invited to join the plan"; (2) "the nature of their employment duties"; (3) "the compensation disparity between top hat plan members and non-members"; and (4) "*the actual language of the plan agreement*." *Id.* (emphasis added). Here, the absence of a written plan renders it impossible for the Court to determine whether the Plan is actually a top-hat plan. (*See* Doc. 24, at 7 (Little acknowledging that "it is unknown to Plaintiff whether Siskin's Plan meets the requirements of a top hat plan.").)

Further, to the extent Little relies on his status as an ERISA beneficiary to assert his claims, a written plan is necessary to determine whether Little is actually a beneficiary of the Plan. As previously discussed, many courts of appeals have recognized that anyone, even an independent contractor or other non-employee, can be an ERISA beneficiary if he or she is designated "*by the terms of an employee benefit plan*" to become entitled to benefits thereunder. 29 U.S.C. § 1002(8) (emphasis added); *see Ruttenberg*, 413 F.3d at 662; *Hollis*, 48 F.3d at 409. Absent a written plan, the Court cannot conclude whether Little was designated a beneficiary under the terms of the Plan or whether he is entitled to benefits thereunder.

Finally, "[i]n determining whether benefits are due under the Plan, the starting point is the language of the Plan itself." *Adams v. Anheuser-Busch Cos., Inc.*, 758 F.3d 743, 746 (6th Cir. 2014) (quoting *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011). "This 'reliance on the face of written plan documents' . . . lends certainty and predictability to employee benefit plans, serving the interests of both employers and their employees." *Orrand*, 794 U.S. at 561 (citing *Sprague*, 133 F.3d at 402).

> [T]o sanction informal 'plans' or plan 'amendments'—whether oral or written—would leave the law of employee benefits in a state of uncertainty and would create disincentives for employers to offer benefits in the first place. Such a result is not in the interests of employees generally, and it is certainly not compatible with the goals of ERISA.

*Sprague*, 133 F.3d at 403.

The difficulty in enforcing a plan absent any written plan documents is evident upon review of the claims in this case. For example, Little asserts claims under ERISA § 502(a)(1)(B), which authorizes a participant or beneficiary to bring a civil action "to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Little contends that, although "Siskin will not provide the Plan defining the

terms of the agreement, . . . some of the terms may be inferred by the strict rules that accompany 457 plans" and by Siskin's 2002 Plan covering other employees. But "the statutory language speaks of *enforcing* the terms of the plan, not *changing* them." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011)) (emphasis in original) (internal quotation marks and alterations omitted). Further, nothing in the statutory language permits the Court to *create* or *infer* terms of a plan where no written plan is available for review or enforcement. Absent a written plan, the Court cannot find that Little is entitled to any plan benefits.

There is no doubt that there are claims that need to be resolved with respect to the money that Little paid to Siskin believing he was contributing to a 457 plan. Yet there is no ERISA claim that can possibly be resolved in this Court—there is no plan, no plan administrator, and no administrative record. The Court does not imply that this is due to some fault of Little or that he does not have potentially meritorious claims against Siskin related to the money he contributed and what he was told about those funds. However, because there is no written plan before the Court, there is nothing for the Court to enforce. Accordingly, Little's ERISA claims fail because, while Little has shown some level of objectionable conduct on Siskin's part, he cannot prove the existence of an ERISA plan, an essential element to his claims. The Court will therefore **GRANT** judgment in Siskin's favor on Little's ERISA claims and **DISMISS** these claims **WITH PREJUDICE**.

### IV.     JURISDICTION OVER REMAINING STATE-LAW CLAIMS

In addition to his ERISA claims, Little asserts a fraudulent-concealment claim and three "alternative causes of action"—breach of contract, promissory estoppel, and unjust enrichment— for which he seeks to recover if it is determined that he lacks statutory standing to bring an

ERISA claim. (Doc. 1, at 43–46.) Because the Court will dismiss Little's ERISA claims, there is no longer a federal question conferring original jurisdiction in this suit. Thus, the only basis for jurisdiction over Little's state-law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[6] The Court may decline to exercise supplemental jurisdiction over remaining claims when the Court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 952 (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)).

Upon consideration of the relevant factors, the Court will exercise its discretion and decline supplemental jurisdiction over the remaining state-law claims. Accordingly, the Court will **DISMISS** Little's state-law claims **WITHOUT PREJUDICE**.

V.      **CONCLUSION**

For the above reasons, this action will be **DISMISSED** in its entirety. Little's ERISA claims will be **DISMISSED WITH PREJUDICE**, and his state-law claims will be **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

---

[6] Little does not allege in the complaint that there is diversity of citizenship between him and Siskin or that the amount in controversy exceeds $75,000.00; thus, there is no basis for finding diversity jurisdiction under 28 U.S.C. § 1332.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**